## GOBLE and others *v.* SCHOONER DELOS DE WOLF.

*(District Court, N. D. Ohio.* May 10, 1880.)

**1. CLASSIFICATION OF LIENS — STATUTORY LIENS — HOME AND FOREIGN PORT.**—*The General Burnside, ante,* 228, followed.

In Admiralty.

The undersigned, to whom it was referred to determine the proper distribution of the proceeds of the sale of said schooner Delos De Wolf, submits the following report:

The gross proceeds of said sale, as appears from the return of the marshal, in this cause was $4,325, out of which there was retained by the marshal, on account of his fees and costs, $281.11, and the balance, $4,043.89, was paid into the registry of the court. From this sum, pursuant to an order of the court heretofore made, the sum of $122.75 has been paid, being the amount of damages decreed by the court against said schooner in favor of Charles Wright and others, on account of their seamen's wages, leaving now for distribution, in the registry, the sum of $3,921.14. The amount and aggregate of the several decrees of this court against said schooner and against said proceeds is as stated in the annexed schedule, marked A, the aggregate amount being: Damages, $9,219.30, (including the damages of said Wright and others;) costs, $491.77, (including the marshal's fees retained by him as aforesaid;) in all the sum of $9,711.07; and, after deducting the payment of said seamen's wages and the amount retained by the marshal, the balance of charge on

said proceeds is $9,307.21—a sum largely in excess of the fund in the registry for distribution.

It is recommended that said net proceeds be distributed as follows: *First*, in payment of the sum of $152.78, the balance of costs incident to the said original suit of libellants; $2.55, the costs incident to the petition of the United States; and $38, the costs in the suit of said Charles Wright and others; in all, $193.36. *Second*, to the payment of $89.78, the claim of the United States for its tonnage tax on said schooner so recovered. And, *third*, that the residue, $3,638, be paid and applied upon the decree in favor of said libellants, the plan of distribution being more fully shown in and by Schedule B, hereto attached.

The undersigned submits that by the provisions of the laws of the United States its claims for taxes constitute a first lien (subject to costs) upon vessels or other property upon which they are levied. It will be observed that after the payment of the costs in the said original cause, the petition of the United States, the costs in said suit of said Wright and others, and the amount decreed to the United States for taxes, it is recommended that the residue of said proceeds be applied exclusively upon the libellants' decree for damages, and this for the following reasons: The defendant vessel was seized and brought into the jurisdiction of the court by virtue of the process issued upon the libel of said Goble and McFarlane, that being the original and first libel filed against her in this court, whereby, as against all other claims of no higher rank, said libellants acquired a priority of claim upon the fund in court produced by her sale. No question is made as to the rank of said wages claim of Charles Wright and others, who have been paid out of the fund, as that claim ranks higher than any of the others decreed, except that of the United States for said taxes.

The claim of libellants is for materials, labor, e+c., in the repair of said vessel in her home port, at Oswego, New York, for which, by virtue of the provisions of the laws of New York, [3 N. Y. St. (6th Ed.) 783,] libellants acquired a lien which is by said statute made superior to all other liens,

except only mariners' wages. The language of said statute is as follows:

"Whenever a debt amounting to $50, or upwards, as to a sea-going or ocean-bound vessel, or amounting to $15, or upwards, as to any other vessel, shall be contracted by the master, owner, charterer, etc., of any ship or vessel, or the agent of either of them, within this state, for either of the following purposes—*first*, on account of any work done or materials furnished towards the * * * repairing, fitting, furnishing, or equipping such ship or vessel * * *—such debt shall be a lien upon such vessel, her tackle, etc., and shall be preferred to all other liens thereon, except mariners' wages."

Said statute contains certain provisions as to the cessation of the lien thus conferred after a time specified therein, unless the holder thereof complies with the conditions set forth; but it is not claimed that there has been any failure on the part of the libellants to comply with all the essential conditions so imposed, so as to deprive them of the rights and benefits claimed under this statute.

While it is not believed that the legislature of New York had the power so to reverse or change the well-settled order of priorities established by the general maritime law, it is believed to have been within the scope of its authority to enact that a lien, such as this statute has provided for, should be created in consonance with the maritime law; and, it being reserved to the courts of admiralty to enforce it, its rank will necessarily be subject to their determination. The national courts will certainly not give such statutory liens a higher rank than they are entitled to by the nature of the claim and the circumstances attending its enforcement, as compared with other claims of the same or similar nature and general rank, and attended by the same circumstances, but will doubtless regard and treat them as equal. In the opinion of the undersigned, the distinction between what is called the "home" and the "foreign" port, in which a charge upon vessels is created by supplies, etc., resulting in difference of rank, is unreal and fallacious; and this view finds powerful support in the well-considered argument of Judge Benedict, [see his

Admiralty, (2d Ed.) § 272, *et seq.*,] and in the opinion of the Hon. John Baxter, circuit judge of this circuit, in a late case, (*The General Burnside, ante,*) in the eastern district of Michigan, to which my attention is called by counsel, but which is not yet printed, and a manuscript copy only has been furnished. For the reasons aforesaid it is recommended that libellants' claim be preferred over the several claims for insurance, and over the claim upon mortgage found in Schedule A, because of its higher rank; and over the several claims in the same schedule for towage, supplies, and labor, being in the same general rank, because of its being the first in suit. *The Globe,* 2 Blatchf. 427; also note in same case, 433; *The Triumph;* also Benedict's Admiralty, (2d Ed.) § 560, p. 332; also 1 Wendell, 39; *The People ex rel. Jennings* v. *Judges, etc.*

A small amount of some of the claims in said Schedule A, of the same general rank as that of libellants, accrued at a later date than said libellants' claim, as appears from the schedules annexed to the several petitions, though much the greater portion were of an earlier date. The rule being that the lien takes rank in the inverse order of date as to season of navigation on the western lakes and rivers, (instead of voyages, as to ocean navigation,) it is found that none of the said claims of equal general rank are entitled to priority over libellants' claim, by reason of the fact, which has been shown in the evidence before me, that said vessel was out of the United States, and beyond the reach of the process of their courts of admiralty, nearly all the time which intervened between the accruing of libellants' claim, in October, 1878, and her actual seizure under process issued out of this court in this cause on the tenth of May, 1879. It thus appears that there was no lack of diligence on the part of the libellants, whereby, by reason of the season of navigation of 1878 having expired before they brought their suit, other claims of the same general rank could gain a preference. "Lien holders should have the current season of navigation to enforce their security, and such reasonable time after the commencement of the next season as may be necessary to arrest the vessel." *The Hercules,* 1 Brown's Ad. 560.

It is proper to remark that, before proceeding to the consideration of this matter and the framing of this report, due notice was given to the proctors of all the parties who have recovered the decrees mentioned in said Schedule A of the time and place when the matter would be heard.

Respectfully submitted,

EARL BILL, Commissioner.

SCHEDULE A.

| No. | LIBELLANTS. | Nature of Claim. | Damages. | Costs. | Total. |
|---|---|---|---|---|---|
| 1742 | George Goble et al....... | Materials, etc. | 4,058 28 | 443 92 | 4,492 20 |
| " | Manhattan Fire Ins. Co.. | Insurance .... | 251 76 | 2 80 | 254 56 |
| " | United States........... | Tonnage Tax.. | 89 78 | 2 55 | 92 33 |
| " | Patrick Smith .......... | Towage ...... | 40 90 | 1 95 | 42 85 |
| " | National Marine Bank of Oswego .............. | Mortgage..... | 4,238 00 | 4 75 | 4,242 75 |
| " | Grant & Fayette........ | Labor, etc.... | 88 28 | 3 40 | 91 68 |
| " | G. D. Morris & Co....... | Supplies, etc. | 17 36 | ...... | ........ |
| " | Phœnix Ins. Co......... | Insurance..... | 263 80 | ...... | ........ |
| " | Vessel Owners' Towing Co...................... | Towage ...... | 37 80 | ...... | ........ |
| " | John Cloy, Agent....... | Supplies, etc.. | 10 59 | 4 40 | 333 95 |
| 1743 | Charles Wright et al..... | Wages........ | 122 75 | 38 00 | 160 75 |
| | Total damages and costs. | .............. | 9,219 30 | 491 77 | 9,711 07 |

SCHEDULE B.

| | | | | |
|---|---|---|---|---|
| | Amount in Registry..................... | ...... | ........ | 3,921 14 |
| | DISTRIBUTION. | | | |
| Costs. | Earl Bill, Clerk...... ............. | 87 98 | | |
| | W. B. Prentice, Marshal.............. | 6 30 | | |
| | P. Zucker, Notary.................... | 40 | | |
| | C. A. Vincent, Notary............... | 1 60 | | |
| | Chas. Balfour, Notary on Depositions.. | 4 60 | | |
| | Earl Bill, Commissioner............... | 22 25 | | |
| | Goulder & Hadden, Proctors.......... | 30 00 | | |
| | Willey, Therman & Hoyt, Proctors.... | 20 00 | | |
| | Goulder & Hadden, Libellants' Dep's... | 20 23 | | |
| | | | 193 36 | |
| Damages | United States......................... | ...... | 89 78 | |
| | Geo. Goble and Jas. D. McFarlane..... | ...... | 3,638 00 | |
| | | | ------- | 3,921 14 |